IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| S.H. & ASSOCIATES, INC.,<br>an Illinois Corporation, | ) ) ) | Case No. 08-cv-4767 |
| Plaintiff, | ) ) | Honorable Judge Andersen |
| v. | ) ) ) | Magistrate Judge Cole |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant, | ) | |

## VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER

NOW COMES Plaintiff, S.H. & Associates, Inc., by its attorneys, WEISSBERG AND ASSOCIATES, LTD., and pursuant to 26 U.S.C.A. §7426, move for entry of a temporary restraining order and preliminary injunction against Defendant, United States of America ("Defendant"), as follows:

## I.  INTRODUCTION

Plaintiff, S.H. & Associates, Inc. ("Plaintiff") is a real estate development company that develops single family, mixed-residential, and commercial properties.  Plaintiff was duly organized as an Illinois corporation in 1990, and its original shareholders were Mrs. Paul Gussin and Sawsan Hammad ("Sawsan").  In or about 1990, Sawsan Hammad purchased the remaining shares of Ms. Gussin.  In or about 1997, Sawsan sold 9% of her shares in Plaintiff to her son Omar Hammad ("Omar"), and 1% of her shares in Plaintiff to her son Kareem Hammad ("Kareem").  *See*, Affidavit of Omar Hammad attached hereto as Exhibit 1, ¶6. Samy Hammad ("Samy"), the husband of Sawsan and father of Omar and Kareem has been the President of Plaintiff from 1990 through the present date.  *See*,

1

Affidavit of Samy Hammad attached hereto as Exhibit 2, ¶5. At all times, Samy never any any responsibilities relating to the general management or day to day operations of Plaintiff, and instead Omar was responsible for those day to day duties. *See,* Affidavits of Omar Hammad and Samy Hammad attached hereto as Exhibits 1 and 2, ¶¶1, 5, respectively. Samy was never a shareholder of Plaintiff, and only served in a limited capacity as President by Plaintiff, and he has never received any monies or compensation whatsoever from Plaintiff. *See,* Affidavit of Samy Hammad attached hereto as Exhibit 2, ¶¶4-5.

In or about 2004, the Internal Revenue Service ("IRS") filed a third-party lawsuit against Samy Hammad in the case of *Urban v. United States of American,* Case No. 03-cv-6630, before Judge Ashman in the United State District Court, Northern District of Illinois, Eastern Division ("Lawsuit"). Pursuant to the Lawsuit, the IRS claimed that Samy's related corporation, All American Corporation, had unpaid employment tax liabilities to the IRS for various periods from September 30, 1991 through 1995. On or about April 25, 2005, the Lawsuit was settled pursuant to a Consent Judgment by which Samy agreed to have a judgment entered against himself, personally, in the amount of $1,003,937.30 ("Judgment Amount"). A copy of the Consent Judgment is attached hereto as Exhibit 3; See Also, Affidavit of Samy Hammad, Exhibit 2, ¶ 12.

Almost three years after the Judgment Amount was entered, on or about January 31, 2008, the IRS placed a Federal Tax Lien on all property of Plaintiff, pursuant to a Notice of Federal Tax Lien Filing and Notice of Federal Tax Lien Filing – Nominee or Alter Ego Notice (collectively, the "Lien"). *See,* the Lien attached hereto as Exhibit 4. Specifically, the Lien has been placed on, and is encumbering the real properties identified on Exhibit 5 hereto (the "Properties").

Samy is not a shareholder, director or employee of Plaintiff, has never co-mingled assets with Plaintiff, and because Samy was never paid or compensated by Plaintiff in any

manner, and is otherwise not an alter-ego or nominee of Plaintiff. See, Affidavit of Samy Hammad attached hereto as Exhibit 1, ¶¶ 4-5.   Accordingly, on or about March 3, 2008, Plaintiff filed an appeal with the IRS objecting to the Notice of Lien against Plaintiff ("Appeal"). See, copy of Appeal documents attached hereto as Exhibit 6.

The Lien has had a devastating affect on Plaintiff's ability to do business.  Since Plaintiff is in the business of developing and selling properties, the Lien has caused each real property owned by Plaintiff to be wholly unmarketable and has had the direct effect of causing all business operations of Plaintiff to shut down. See, Affidavit of Omar Hammad attached hereto as Exhibit 1, ¶19.

On or about August 8, 2008, Plaintiff entered into a real estate contract for the sale of its property located at 732 Forest Glen Drive, Oak Brook, Illinois, but has been unable to so, due to the encumbrance on title caused by the Lien. See, Affidavit of Omar Hammad attached hereto as Exhibit 1, ¶18; See Also, Real Estate Contract attached hereto as Exhibit 7.

Accordingly, Plaintiff is requesting that this Court enter an Order setting aside the Lien, injunctive relief requiring Defendant to immediately release and/or otherwise remove the Lien on Plaintiff's properties, and an Order enjoining Defendant from seizing or otherwise enforcing the Lien.

Without the injunctive relief sought herein, Plaintiff will be irreparably harmed through the immediate and irreversible loss of their protectable interest in their properties that are the subject of the Defendant's wrongful Lien.

Plaintiff restates and realleges the allegations in the Complaint as if fully stated herein, and submit the Affidavit of Omar Hammad, the general manager of Plaintiff, and Samy Hammad, the tax payer liable for the amounts under the Lien, in support of this Motion.

3

## II.  PARTIES

1.      Plaintiff, S.H. & Associates, Inc. ("Plaintiff") is an Illinois corporation with its principal place of business in Oakbrook, Illinois.

2.      The Defendant, United States of America ("United States") is substituted as a matter of law for the Internal Revenue Service ("IRS").

## III. ARGUMENT

3.      A federal tax lien does not attach to property in which a taxpayer has no interest under state law.  *See, United States v. Towne*, 406 F.Supp.2d 928, 932 (N.D.Ill. 2005); *See Also, United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919 (1985) (holding that state law controls the determination of legal interest taxpayer has in property).

4.      The Plaintiff has complete ownership interest in the Properties.  See, Affidavit of Omar Hammad attached hereto as Exhibit 1, ¶12.

5.      Samy has no ownership or other interest in the Properties. See, Affidavit of Samy Hammad attached hereto as Exhibit 2, ¶7.

6.      The wrongful levy statute, 26 U.S.C. § 7426 ("Wrongful Levy Statute"), provides that a non-taxpayer is entitled to injunctive relief, including, the release of a federal tax lien, if the non-taxpayer's property is wrongfully levied upon.  See, 26 U.S.C. §7426 (b)(1); *See Also, United States v. Towne*, 406 F.Supp.2d 928, 932 (N.D.Ill. 2005).

4

7.    Here, the issuance and filing of the Lien, constitutes a levy under the Wrongful Levy Statute.  *See, United Pacific Insurance v. United States*, 320 F.Supp. 450 (D.Ore. 1970).

8.    Defendant filed the Lien on the basis that Plaintiff is the alter ego or nominee of the Plaintiff.  The Lien should be immediately removed because under Illinois law, Samy, is neither the alter ego or nominee of the Plaintiff.

## PLAINTIFF IS NOT THE ALTER EGO OF SAMY

9.    Under Illinois law, "in determining whether to disregard a corporate entity, a court should consider the following variables, with no single factor being determinative: (1) inadequate capitalization, (2) the failure to issue stock, (3) the failure to observe corporate formalities, (4) the payment of dividends, (5) the insolvency of the debtor corporation at the time, (6) the nonfunctioning of other corporate officers or directors, (7) the absence of corporate records, and, (8) whether the corporation is a mere façade for the operation of dominant shareholders."  *People v. V&M Industries, Inc.*, 298 Ill.App.3d 733, 740, 700 N.E.2d746, 233 Ill.Dec. 218 (5th Dist. 1998).

10.    Here, Plaintiff: (1) at all relevant times, has never been inadequately capitalized, (2) has issued stock, (3) has observed corporate formalities, maintained its own bank accounts, maintained its own separate corporate minute book;  (4) was not insolvent at the time the Lien was imposed by Defendant or at anytime prior, (5) has other functioning officers and directors, including Omar Hammad and Kareem Hammad; (6) maintains corporate records, and (7) Samy is not and never has been a shareholder of Plaintiff.  *See*, Affidavit of Omar Hammad, the Secretary and shareholder of Plaintiff attached hereto as Exhibit 1, ¶¶ 7-16.

11.    Based on the foregoing, Samy should not be deemed the Alter Ego of Plaintiff.

## PLAINTIFF IS NOT THE NOMINEE OF SAMY

12.     The key to in determining whether a nominee theory is applicable is whether the transferor of property had control over the Property.  *See, United States v. Towne*, 406 F.Supp. at 937.

13.     Here, Plaintiff had control over the Properties at all times.  In fact, Plaintiff purchased the Properties, Samy never owned and sold any property that SH ever owned, and Samy never bought any property from SH.   See, Affidavit of Samy Hammad, attached hereto as Exhibit ¶¶7-11.

14.     Based on the foregoing, Plaintiff should not be deemed a nominee of Samy.

## PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

15.     Generally, four factors must be satisfied before an injunction will be granted, namely that 1) the plaintiff possesses a clearly ascertainable right in need of protection; 2) there is a likelihood that the plaintiff will succeed on the merits; 3) the plaintiff will suffer irreparable injury if an injunction does not issue; and, 4) the plaintiff has no adequate remedy at law. *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 156, 601 N.E.2d 720, 726-727 (1992).

However, "[u]nder Illinois law, "where a statute expressly authorizes injunctive relief to enforce the provisions of the statute, the general rule of equity requiring a showing of a lack of an adequate remedy at law and irreparable injury need not be shown." *Pepsico, Inc. v. Redmond*, 1996 WL 3965 (N.D.Ill. 1996).  Because here the Wrongful Levy Statute expressly provides for injunctive relief, Plaintiff is not required to allege or prove an inadequate remedy at law and irreparable injury in order for this Court to grant the injunctive relief sought.  *See,* 26 U.S.C.A. §7426(b)(1).

**A.    *Plaintiffs Have Clear and Ascertainable Rights in Need of Protection.***

16.    Plaintiff has a clearly ascertainable right in need of protection conferred, namely its ownership interest in the Properties has been encumbered, as has its ability to freely transfer and purchase real estate in order to keep its business operating.  A plaintiff who is able to demonstrate "an injury to some substantive interest recognized by statute or the common law" has established a clearly ascertainable right in need of protection for purposes of obtaining injunctive relief. *Kilhafner v. Harschbarger*, 245 Ill.App.3d 227, 229, 614 N.E.2d at 897, 899 (3rd Dist. 1993). Illinois courts have long recognized the unique nature of real property as an ascertainable right in need of protection. *See, Rootberg v. Richard J. Brown Associates of Delaware*, Inc., 14 Ill.App.3d 301, 302 (1st Dist. 1973); *LaSalle National Bank v. Refrigerated Transport Co.,* 165 Ill.App.3d 899, 900-901 (1st Dist. 1987)

**B.    *Plaintiff Has Shown a Likelihood of Success on the Merits.***

17.    It is not necessary that a plaintiff make out a case that in all events will warrant relief at the final hearing.  *The Systems, Inc. v. Telcom Midwest, Inc.*, 203 Ill.App.3d 142, 151, 560 N.E.2d 1080, 1086 (1st Dist. 1990).  It is only necessary that the plaintiff raise a 'fair question' as to the likelihood of success on the merits. *Buzz Barton & Associates, Inc. v. Giannone,* 108 Ill.App.2d 373, 382, 483 N.E.2d 1271, 1275 (1985).

18.    As discussed above, because Plaintiff is neither the alter ego nor nominee of Plaintiff, Plaintiff has adequately alleged that it has a high likelihood of success on the merits.

**C.    *The Balancing of Equities Favors Plaintiff***

19.    Plaintiff's ownership interest in the Properties is greater than Defendant's fictitious interest in the Properties and assets of Plaintiff.  Although the IRS may have a

greater interest in the property and assets of Samy due to the Consent Judgment, because Samy is not an alter ego or nominee of Plaintiff, the Defendant has no tangible or cognizable interest in any of the Properties of Plaintiff.

20.    Defendant's improper Lien has had the result of seizing all business operations of Plaintiff, and is putting Plaintiff in jeopardy of defaulting under the sales contract for the Forest Glen Property.

21.    Accordingly, Plaintiff's real injuries that arise as a result of Defendant's improper Lien, including, the loss of control of the marketability of the Properties and the loss of Plaintiff's business value as a result of the Lien, clearly outweigh Defendant's fictitious rights in those Properties.  Accordingly, the balancing of the equities clearly favors Plaintiff.

WHEREFORE, Plaintiff, S.H. & Associates, Inc., prays for the entry of a temporary restraining order, preliminary injunction, and permanent injunction as follows:

A.    Directing Defendant to immediately record a Release of the wrongful Lien with the Recorder of Deeds of Cook County and DuPage counties, Illinois, including the Forest Glen Property;

B.    Directing Defendant to immediately cease and desist from the unauthorized recording of any future liens on the property of Plaintiff;

C.    Directing Defendant to immediately cease and desist from preventing Plaintiff's ability to sell the Properties;

D.    That the Court waive any requirement of surety or bond based on the likelihood of success on the merits; and

8

E.    For such other and further relief that this Court deems just and proper.

**S.H. & ASSOCIATES, INC.,** Plaintiff

By:_____/s/ Ariel Weissberg_____
One of its attorneys

Ariel Weissberg, Esq. (Attorney No. 03125591)
Rakesh Khanna, Esq. (Attorney No. 6243244)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL  60605
T. 312-663-0004
F. 312-663-1514

## VERIFICATIONS

I, Omar S. Hammad, on S.H. & Associates, Inc., being first duly sworn on oath, attest and state that I have reviewed the allegations contained in the Verified Motion for Temporary Restraining Order, and that the statements contained therein are true and accurate to the best of my knowledge and belief.

_____
Omar S. Hammad

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SH & ASSOCIATES, INC.,<br>an Illinois Corporation, | ) ) ) | Case No. 08-cv-4767 |
| Plaintiff, | ) ) | Honorable Judge Andersen |
| v. | ) ) ) | Magistrate Judge Cole |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant, | ) | |

### AFFIDAVIT OF OMAR HAMMAD

I, Omar Hammad, being duly sworn, state:

1. At all relevant times discussed herein, I was the Secretary and operating manager who handles the day to day operation of SH, as well as, a shareholder of S.H. & Associates, Inc. ("SH").

2. I am submitting this Affidavit in support of, and adopt the statements in SH's Verified Motion for Temporary Restraining Order.

3. SH is an Illinois corporation that was formed and organized in 1990, and is in the business of buying, selling, and developing single family properties, multi-residence properties, and commercial properties.

4. The initial sole shareholders of SH were Sawsan Hammad ("Sawsan") and Mrs. Paul Gussin, who both owned fifty percent of the shares of SH in 1990.

5. In 1990 Mrs. Gussin sold her entire shareholder interest in SH to Sawsan.

6. Subsequently, in or about 1997 Sawsan sold nine percent of the shares of SH to myself and 1 percent of the stock of SH to Kareem Hammad.

**EXHIBIT**

_1_

7.    Samy Hammad ("Samy") has never been a shareholder or director of SH.

8.    Samy has been the President of SH since 1990 but has never received a salary or any other compensation from SH.  Samy had a very limited role with SH, limited primarily to signing checks on behalf of SH.

9.    Since its inception, SH has always followed corporate formalities, has maintained its own bank account, corporate minute book and has filed its own tax returns.

10.    SH never co-mingled any of its assets with those of Samy or anyone else.

11.    At no time since its incorporation has SH ever been insolvent or inadequately capitalized.

12.    Currently and as of January 31, 2008, SH owns and has a fee title interest in the following properties:

| Street Address | City | State | Zip | County | PIN | Cost $ |
|---|---|---|---|---|---|---|
| 732 Forest Glen | Oak Brook | IL | 60523 | DuPage | 06-24-208-079 | 530,000 $ |
| 40 N. Tower Road Unit 7N | Oak Brook | IL | 60523 | DuPage | 06-28-108-321 | 200,000 $ |
| 537 E. Park Ave. | Elmhurst | IL | 60126 | DuPage | 06-01-412-044 | 300,000 $ |
| 443 N. Emery Lane | Elmhurst | IL | 60126 | DuPage | 03-35-305-013 | 750,000 $ |
| 10S521 Dunham Drive | Downers Grove | IL | 60516 | DuPage | 10-06-303-008 | 385,000 $ |
| 929 Ashford Lane | Westmont | IL | 60559 | DuPage | 09-15-304-033 | 300,000 $ |
| 345 W. Superior St. Unit A | Chicago | IL | 60610 | Cook | 17-09-207-006-1009 | 500,000 $ |
| 123 E. 43rd Street | Chicago | IL | 60653 | Cook | 20-03-302-026-0000 | 200,000 $ |
| 3954 W. Lake Street | Chicago | IL | 60624 | Cook | 16-11-300-020-0000 | 300,000 $ |
| 350 N. Cicero Ave. | Chicago | IL | 60644 | Cook | 16-09-402-025-0000 | 300,000 $ |

2

| | | | | | 20-07-405-022-0000 | $ 500,000 |
|---|---|---|---|---|---|---|
| 5100 S. Paulina St. | Chicago | IL | 60609 | Cook | 28-18-100-047-1001 | $ 300,000 |
| 15501 70th Court | Orland Park | IL | 60462 | Cook | 19-34-329-037-0000 | $ 180,000 |
| 8356 S. Kilbourn Ave. | Chicago | IL | 60652 | Cook | 24-35-408-017-0000 | $ 150,000 |
| 3426 W. 135th Street | Robbins | IL | 60472 | Cook | 15-10-127-004-0000 | $ 225,000 |
| 1816 St. Charles Road | Maywood | IL | 60153 | Cook | 15-10-127-003-0000 | N/A |
| 1816 St. Charles Road | Maywood | IL | 60153 | Cook | 15-10-127-002-0 | N/A |
| 1816 St. Charles Road | Maywood | IL | 60153 | Cook | | |

(collectively, hereinafter referred to as the Properties").

13.    Samy never owned, purchased, or had any ownership or title interest in any of the Properties at anytime.

14.    Samy never received the proceeds from the sales of any properties that SH ever owned, and rather those proceeds were always deposited into the SH's bank accounts.

15.    None of the Properties were ever used as security for personal loans by Samy, or for any loans other than those for the benefit of SH.

16.    Because SH is a Subchapter S corporation, SH never paid any dividends to its shareholders.

17.    Currently, SH has a contract for the sale of property listed above at 732 Forest Glen Drive, Oak Brook Illinois ("Forest Glen Property"). Attached hereto as Exhibit A, is the contract for the sale of the Forest Glen Property.

18.    However, SH can not sell the Forest Glen Property due to the encumbrance of the Federal Tax Lien that was placed on all of the assets of SH by the IRS in or about January, 2008 ("Lien").

3

19.    SH has been unable to conduct any business or raise any revenue since the IRS imposed the Lien on SH.

20.    At the time I signed this Affidavit, my father, Samy Hammad, is out of the country in Egypt for the next month, with no ability to check his emails or receive or send any communications.

21.    On September 3, 2008, I spoke with Samy Hammad on the phone and read to him every allegation appearing on his affidavit, and he agreed and consented with every allegation contained therein.

22.    Accordingly, Samy Hammad provided me with the express authority and consent to sign his affidavit in support of the Verified Motion for Temporary Restraining Order on his behalf.

23.    I have personal knowledge of the statements made in this affidavit and if called as a witness, I am competent to testify to the matters stated.

_____
Omar Hammad

SUBSCRIBED AND SWORN TO
before me this ___3rd___ day
of September, 2008

_____
NOTARY PUBLIC

OFFICIAL SEAL
HAVA WEISSBERG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/05/10

4



**REAL ESTATE SALE CONTRACT**
Approved by the **CHICAGO ASSOCIATION OF REALTORS**

1. **PARTIES:**

2. SELLER: DBR SH + Associates   PURCHASER: Midwest Leasing of Oak Brook, Inc.
3. ADDRESS: 2 Shelbyne   ADDRESS: 55 W. Wacker Drive #1120
4. Oak Brook IL 60523   Chicago, IL 60601

5. Purchaser and Seller are hereinafter sometimes referred to as the "Parties."
6. Purchaser hereby agrees to purchase and Seller agrees to sell the following described real estate, on the terms and conditions
7. herein set forth.

8. **DESCRIPTION OF PROPERTY:**
9. **TYPE OF PROPERTY** (check one):  ✓ Single Family  ____ Condominium  ☒ Townhouse
10. ____ Multi-Family  ____ Vacant Lot
11. STREET ADDRESS 732 FOREST GLEN LANE, OAK BROOK, IL 60523
12. (Include "Unit Number" if condominium or townhouse)   (CITY)   (STATE)
13. LOT SIZE: APPROXIMATELY 55 X 133 X 163 X 160 X ____ X ____ FEET.
14. LEGAL DESCRIPTION: The Parties agree that the correct legal description may be attached at any time hereinafter.
15. IMPROVED WITH _____
16. together with all appurtenances attached to and forming a part of the premises, for which Seller shall deliver a Bill of Sale at time
17. of delivery of deed: existing heating, plumbing, electrical lighting fixtures, storm windows, storm doors and screens, if any;
18. drapery rods, curtain rods, if any; fencing, if any; attached air conditioners, if any; attached outside antenna, if any; water softener
19. (except rental units), if any; all planted vegetation; ceiling fans, if any, automatic garage door system and all related remote
20. hand-held units, if any; and specifically including the following items of personal property now on the premises:
21. oven/range, microwave,refrigerator, dishwasher, washer, dryer, disposal
22. _____

23. **PRICE AND TERMS:**
24. PURCHASE PRICE *See attached contigency   $ 685,000
25. EARNEST MONEY DEPOSIT
26. In the form of (cash), (personal check), (cashier's check) or (Judgment note due _____ )   $ 30,000
27. _____   $
28. BALANCE DUE AT CLOSING _____   $ 635,000

29. **FINANCING:**
30. This Contract is contingent upon Purchaser securing within N/A _____ ( _____ ) days of acceptance
31. hereof a written mortgage commitment on the real estate herein in the amount of $ _____ or such lesser sum as
32. Purchaser accepts, with interest not to exceed _____ % per year, to be amortized over ____ years, the combined origination
33. and discount fees for such loan not to exceed _____ %, plus loan processing fees, if any. Purchaser shall make written
34. application for such loan within ten (10) days from date of acceptance of this Contract, shall cooperate with the lender in supplying
35. all necessary information and documentation; and shall diligently attempt to obtain the mortgage described herein. In the event
36. Purchaser is unable to secure such loan commitment, Purchaser shall provide written notice of same to Seller or Seller's attorney.
37. Seller may, at Seller's option, within an equal number of additional days, procure for Purchaser such a commitment or notify
38. Purchaser that Seller will accept a purchase money mortgage upon the same terms. In the event neither Purchaser nor Seller secure
39. such loan commitment as herein provided within the time allowed, then this Contract shall become null and void and all earnest
40. money shall be returned to Purchaser. Purchaser shall be allowed to have a mortgage or trust deed placed of record prior to
41. closing, but any delays caused thereby shall not constitute a default by Seller. Seller must allow reasonable inspection of the
42. premises by Purchaser's financing agent. Unless a contingent upon sale/closing provision is attached and made part of this
43. Contract, Purchaser represents that Purchaser's ability to obtain financing is not subject to the sale, closing, or rental of any other
44. real estate. Purchaser will be deemed to be in default if Purchaser obtains a loan commitment conditioned upon the sale, closing, or
45. rental of other real estate, and fails to close this transaction as agreed.

46. **CLOSING:**
47. The closing shall be on or before ASAP 8. 24. 08 ____ at the office of Purchaser's lender, or Title Company
48. **POSSESSION:** (Select one applicable option)
49. Seller shall deliver possession to Purchaser at closing, OR
50. Seller shall deliver possession to Purchaser within N/A _____ ( _____ ) days from date of
51. closing. Seller agrees to pay Purchaser for use and occupancy the sum of $ _____ per day for each day after
52. closing that Seller retains possession. Seller shall be responsible for heat, utilities and home maintenance expenses during such

©2002 Chicago Association of REALTORS®
All Rights Reserved

Revised 02/02

**EXHIBIT**
A

53. period, and shall deliver possession of the real estate in the same condition as it is in, on the date of closing. Should Seller
54. fail to deliver possession to Purchaser as agreed, Seller shall pay to Purchaser beginning on the N/A _____ day after closing,
55. the sum of $ _____ per day until possession is delivered to Purchaser and Purchaser shall, in addition to
56. all other remedies, have the immediate right to commence any legal action or proceeding calculated to evict and remove Seller
57. from the premises. Seller agrees to waive all notices required by the Forcible Entry and Retainer Act or any other statute, and
58. consents to an immediate judgment for possession. Seller further agrees to reimburse Purchaser for all reasonable attorneys' fees
59. and court costs Purchaser may incur in the enforcement of Purchaser's rights pursuant to this provision.
60. Seller shall deposit the sum of $ _____ in escrow with _____ , as Escrowee,
61. at the time of closing, and any monies due Purchaser for Seller's use and occupancy hereunder shall be paid to Purchaser
62. from this deposit and the balance, if any, shall be refunded to Seller. Possession shall be deemed delivered to Purchaser
63. when Seller, has vacated the premises and delivered the keys to Purchaser or the Escrowee. Escrow money shall be limited to
64. delivery of possession, and funds held pursuant to this paragraph shall be used only to satisfy payment for use and occupancy.

65. **TITLE EVIDENCE:**
66. Seller, at Seller's expense, shall furnish not less than five (5) days prior to the closing date, a title commitment for an owners title
67. insurance policy issued by an Illinois licensed title insurance company in the amount of the purchase price covering the date hereof
68. subject only to (a) the general exceptions contained in the title policy (except that, where the subject property qualifies as a single
69. family residential unit, the policy shall provide extended coverage over the general exceptions); (b) the title exceptions set forth
70. below; and (c) title exceptions pertaining to liens or encumbrances which have been assumed by Purchaser under the terms hereof
71. or which Seller has agreed to remove at closing from the proceeds hereunder. Any delay in delivery of the title commitment which
72. is caused by Purchaser, Purchaser's agent, or Purchaser's lending agency shall extend the time for delivery thereof by Seller for
73. such period of delay. If the title commitment discloses exceptions not provided for herein, Seller shall have until closing to
74. remove such exceptions or to acquire title insurance covering such unpermitted exceptions. If Seller fails to remove, such
75. exceptions or obtain additional insurance within the time stated herein, Purchaser may elect to terminate this Contract and all
76. monies paid by Purchaser shall be refunded to Purchaser.

77. **DEED (CONVEYANCE, LIENS, ENCUMBRANCES):**
78. Seller shall convey or cause to be conveyed to Purchaser title to the premises by a recordable general warranty deed with release
79. of homestead rights, or trustee's deed if applicable, in joint tenancy, if more than one Purchaser, or to Purchaser's nominee, subject
80. only to the following permitted exceptions, provided none of which shall materially restrict the reasonable use of the premises as a
81. residence: (a) general real estate taxes not due and payable at the time of closing; (b) building lines and building laws and
82. ordinances, use or occupancy restrictions, conditions and covenants of record; (c) zoning laws and ordinances which conform to
83. the present usage of the premises; (d) public and utility easements which serve the premises; (e) public roads and highways, if any;
84. (f) party wall rights and agreements, if any, and (g) limitations and conditions imposed by the Illinois Condominium Property Act
85. and condominium declaration, if applicable.

86. **PRORATIONS:**
87. The following items, if applicable, shall be prorated as of the date of closing: (a) insurance premiums; (b) general real estate taxes,
88. including special service areas, if any; (c) rents and security deposits; (d) interest on mortgage indebtedness assumed; (e) water
89. taxes; (f) homeowners and/or condominium/townhome association dues and assessments; (g) prepaid service contracts. Prorations
90. of general taxes shall be on the basis of 105% of the last ascertainable bill. If such bill is based on a partial assessment or on an
91. unimproved basis for improved property, a written agreement (with escrow) for final proration when the complete assessment
92. information is available from the County Assessor shall be signed at closing by the parties hereto.

93. **SURVEY:**
94. Seller, at Seller's expense, except for condominiums, shall furnish to Purchaser a current spotted survey (dated not more than 6
95. months prior to the closing date) under certification by an Illinois licensed land surveyor showing the location of all improvements,
96. easements and building lines. The location of all improvements on the subject property shall be within the lot lines and not
97. encroach upon any easements or building lines, and such survey shall show no encroachments from adjoining properties. In the
98. event such survey discloses encroachments, these encroachments shall be insured by the title company for Purchaser and
99. Purchaser's lender at Seller's expense.

100. **COMMISSION:**
101. Real estate broker's commission shall be paid in accordance with the terms of the listing agreements and buyer representation
102. agreements of the respective parties, unless otherwise agreed in writing by the respective parties and their brokers. Seller's broker
103. and Purchaser's broker are identified after the execution section of this Contract.

104. **ATTORNEY MODIFICATION:**
105. The terms of this Contract, except the purchase price, closing date, and possession date, are subject to good faith modification
106. (which may include additional terms) by the attorneys for the parties within ~~three (3)~~ business days from the Contract Date
107. (excluding Saturday, Sunday, and legal holidays). Notice of modification shall be in writing, served upon the other party or such
108. party's agent, and shall state the specific terms to be modified and the proposed revisions. IN THE ABSENCE OF WRITTEN
109. NOTICE WITHIN THE TIME SPECIFIED HEREIN, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES
110. HERETO AND THIS CONTRACT SHALL CONTINUE IN FULL FORCE AND EFFECT. THE PARTIES ACKNOWLEDGE THAT
111. MODIFICATION PURSUANT TO THIS PROVISION SHALL CONSTITUTE A COUNTEROFFER.

2

112. **CLEAN CONDITION:**
113. Seller shall leave the premises in broom-clean condition. All personal property not to be conveyed to Purchaser and all refuse shall
114. be removed from the premises at Seller's expense by the possession date.

115. **PROPERTY INSPECTION CONTINGENCY:** (Select one applicable option)
116. Purchaser declines to have a professional property inspection performed, and this Contract shall not be contingent upon such
117. an inspection,

118.                                                      OR

119. Purchaser shall have the right, for a period of five (5) business days following the date of acceptance of this Contract, to have
120. the subject property and its improvements inspected by a certified home inspection service of Purchaser's choice, and at
121. Purchaser's cost. The home inspection shall cover ONLY the major components of the Premises: central heating system(s),
122. central cooling system(s), interior plumbing system, electrical system, all mechanical systems, and structural components,
123. consisting of roof, walls, windows, ceilings, floors and foundation. A MAJOR COMPONENT SHALL BE DEEMED TO BE IN
124. OPERATING CONDITION IF IT PERFORMS THE FUNCTION FOR WHICH IT IS INTENDED REGARDLESS OF AGE, AND
125. DOES NOT CONSTITUTE A THREAT TO HEALTH OR SAFETY. Purchaser shall indemnify Seller and hold Seller harmless
126. from and against any loss or damage caused by the acts of negligence of Purchaser or any person performing such inspection.
127. PURCHASER AGREES MINOR REPAIRS AND ROUTINE MAINTENANCE ITEMS ARE NOT A PART OF THIS
128. CONTINGENCY. The parties agree that repairs which do not exceed, in the aggregate, $500.00 to remedy shall be considered
129. minor deficiencies for the purpose of this paragraph and Purchaser agrees to assume those repairs with no allowance from Seller.
130. Purchaser, within the five (5) business days after acceptance of Contract, shall have the right and option to serve written notice
131. upon Seller, Seller's listing agent, or attorney of the above deficiencies disclosed by the inspection report when the cumulative
132. cost of repair exceeds the limitation set forth herein, and Purchaser shall have the right to request repair of all such deficiencies.
133. In the event Purchaser makes a request for certain repairs, Purchaser shall immediately deliver a copy of the inspection report to
134. Seller. Seller shall, within five (5) business days thereafter, notify Purchaser that (i) Seller will repair such deficiencies; (ii)
135. Seller will, at closing, credit Purchaser in an amount equal to the reasonable cost of the repair of such deficiencies; or (iii)
136. Seller proposes to negotiate the cost or obligation of correcting certain defects; or (iv) Seller will neither repair nor provide a
137. credit. In the event Seller selects option (iv), upon receipt of Seller's notice, Purchaser shall within two (2) business days
138. thereafter notify Seller of Purchaser's election to either proceed with the transaction, waiving all home inspection repair
139. requests, or declare the Contract null and void, in which case all earnest money shall be promptly refunded to Purchaser. The
140. parties hereto agree that the following items are accepted by Purchaser "As Is", shall not be made a part of Purchaser's request
141. for repairs, and shall not be further negotiated:
142. IN THE ABSENCE OF WRITTEN NOTICE OF REQUEST FOR REPAIRS FROM PURCHASER WITHIN THE TIME
143. SPECIFIED HEREIN, THIS HOME INSPECTION CONTINGENCY SHALL BE DEEMED WAIVED BY PURCHASER AND NO
144. LONGER A PART OF THIS REAL ESTATE SALE CONTRACT.

145. **WELL AND SEPTIC TEST:** (Select one applicable option)
146. The subject property is served by a community or municipal water and sewage treatment system (well and septic test provision
147. inapplicable),

148.                                                      OR

149. The subject property is not served by a community or municipal water and/or sewage treatment system. Seller, at Seller's
150. expense, prior to closing, shall obtain and deliver to Purchaser a water test performed by or acceptable to the county in which
151. the property is located, and a septic system test indicating that the system is in proper operating condition and in compliance
152. with applicable state, county and local statutes. Such tests shall be performed not more than 60 days prior to the closing date.
153. If either of such written tests reports indicate that the water is not potable, that the septic system is not in proper operating
154. condition, or that the systems are not in compliance with the relevant statutes, Seller shall have the option to make the
155. necessary repairs and bring the system(s) into compliance prior to the closing date. In the event Seller elects not to make the
156. necessary repairs, then this Contract, at the option of Purchaser, shall become null and void, and all earnest money shall be
157. refunded to Purchaser.

158. **FLOOD PLAIN:**
159. Purchaser shall have the option of declaring this Contract null and void within five (5) days of receipt of any written notice or
160. disclosure, including the Residential Real Property Disclosure Report, that the property is located in a special flood plain hazard
161. area which requires Purchaser to obtain flood insurance. This option shall not exist in the event such written notice or disclosure
162. was provided in statement number three (3) of a Residential Real Property Disclosure Report executed by both Seller and
163. Purchaser prior to the Contract Date.

164. **PERFORMANCE / DEFAULT / RELEASE OF EARNEST MONEY:**
165. The earnest money and this Contract shall be held by Schiller Realty_____ (Escrowee) for the benefit of the parties
166. hereto, and applied to the purchase price at closing. In the event of a default by Seller or Purchaser, the parties are free to pursue
167. any legal remedies available at law or in equity. THERE SHALL BE NO DISBURSEMENT OF EARNEST MONEY UNLESS
168. ESCROWEE HAS BEEN PROVIDED WITH A WRITTEN AGREEMENT FROM SELLER AND PURCHASER. Absent an agreement
169. relative to the disbursement of earnest money within a reasonable period of time, Escrowee may deposit the funds with the Clerk
170. of the Circuit Court by the filing of an action in the nature of an interpleader. Escrowee shall be reimbursed from the earnest money
171. for court costs related to the filing of the interpleader action. Seller and Purchaser hereby indemnify and hold Escrowee harmless
172. from any and all claims and demands arising out of any release of earnest money pursuant to a written agreement of the parties or
173. court order.

3

174. **TERMITE INSPECTION:**
175. Prior to closing, Seller, at Seller's expense, shall deliver to Purchaser a written report from an inspection company certified to do termite
176. inspections by the State Department of Public Health, dated not more than six (6) months prior to the closing date, stating that there is no
177. visible evidence that the premises are infested by active termites, or other wood boring insects. Unless otherwise agreed between the parties, if
178. the report discloses evidence of active infestation or structural damage, Purchaser shall have the option within five (5) business days of
179. Purchaser's receipt of the report to proceed with the purchase or declare this Contract null and void. This provision shall not be applicable to
180. condominiums or to newly constructed property having been occupied for less than one year following completion of construction.

181. **GENERAL CONDITIONS AND STIPULATIONS:**
182. (a) Both Seller and Purchaser agree to execute all documents and provide all information necessary to enable any lender to issue a commitment
183. for mortgage or trust deed and to close this sale.
184. (b) Seller represents that Seller has not received any notice from any governmental body of any ordinance, zoning or building code violation,
185. condemnation proceeding, pending rezoning, or special assessment proceedings affecting the property.
186. (c) All notices herein required shall be in writing and served upon the parties at the addresses shown on this Contract or upon the attorney for
187. such party. In the event the name and address of Seller or the attorney for Seller is unknown, written notice may be served upon the listing
188. broker as agent for Seller. Facsimile transmission of any offer, acceptance, notice, or rider herein provided to the parties, their broker or
189. attorney, shall constitute sufficient notice or acceptance. Original documents shall be forwarded in all instances within three (3) business
190. days of such notice. Notice to any one party of a multiple person party shall be sufficient service to all.
191. (d) This Contract and any Riders attached hereto shall constitute the entire agreement and understanding between Seller and Purchaser, and
192. there are no other agreements, representations, or understandings, oral or written, between the parties with respect to the subject matter of
193. this Contract. No alteration, modification, or amendment to this Contract shall be valid unless in writing and signed by all parties.
194. (e) This Contract shall be binding upon and inure to the benefit of the parties and their respective heirs, successors, legal representatives and
195. permitted assigns.
196. (f) This Contract is subject to the provisions of Public Act 89-111 known as the Residential Real Property Disclosure Act, the terms of which are
197. expressly incorporated herein and made a part of this Contract. Seller represents that the information contained in the disclosure document
198. is accurate as of the Contract Date.
199. (g) The invalidity of any paragraph or subparagraph of this Contract shall not impair the validity of any other paragraph or subparagraph. If any
200. provision of this Contract is determined to be unenforceable by a court, such provision shall be deemed severable and this Contract may be
201. enforced with such provision severed or as modified by such court.
202. (h) Prior to closing, Purchaser shall have the right to enter into and make a final inspection of the premises to determine that the premises are
203. in the condition required by the terms of the Contract. If there has been an adverse change in the condition of the premises since the Contract
204. Date, Seller shall restore the premises to the same condition as it was on the Contract Date, or as called for by the terms of the Contract.
205. (i) Seller shall pay for the State of Illinois and county real estate transfer tax stamps. Any municipal transfer tax shall be paid by the party
206. designated in the ordinance of the municipality imposing the tax.
207. (j) If the improvements on the property shall be destroyed or materially damaged by fire or other casualty prior to closing, the provisions of the
208. Uniform Vendor and Purchaser Risk Act of Illinois shall apply.
209. (k) If Purchaser or Seller under this Contract is an Illinois land trust, the individual beneficiaries thereto have signed their names to this
210. Contract to indicate they are the beneficiaries of such trust in order to guarantee their performance of this Contract and to indicate that they
211. hold the sole power of direction with regard to such trust.
212. This Contract and Riders numbered_____, **RESIDENTIAL REAL PROPERTY DISCLOSURE**
213. **REPORT** and **LEAD BASED PAINT DISCLOSURE**, unless inapplicable, are attached hereto and incorporated herein, shall be executed
214. by Purchaser and Seller and one copy thereof delivered to Seller and one copy delivered to Purchaser.

215. **THIS IS A LEGALLY BINDING CONTRACT WHEN SIGNED. IF NOT UNDERSTOOD, SEEK LEGAL ADVICE BEFORE SIGNING.**

216. PURCHASER(S): _____    SELLER(S): _____

217. PURCHASER(S): _____    SELLER(S): _____

218. Date of Offer: 8·8·08    Date of Acceptance*: 8/8/08

219. (*This date shall be inserted only after the parties hereto have agreed to all the terms and conditions of this Contract and is also referred to herein as the Contract Date).

## IDENTIFY OF BROKERS AND ATTORNEYS
*(Please complete when executing the Contract)*

220. PURCHASER'S BROKER: Keller Williams Gold Coast Realty    SELLER'S BROKER: Schiller Realty    Dina Ferriola

221. Telephone: 312-981-8500/312-388-2610    Telephone: 630-617-6074
222. Fax: 773-762-2604    Fax: 630. 834. 9454
223. [✓] (Designated) or [ ] (Dual Agent) (Select one)    [✓] (Designated) or [ ] (Dual Agent) (Select one)
224. Elizabeth Gossage    Dina Ferriola
        *(Agent's Name)*        *(Agent's Name)*

225. PURCHASER'S    SELLER'S
226. ATTORNEY: Larry Brown    ATTORNEY: Larry Ordower (Mike)
227. Telephone: 847-675-2283    Telephone: 312-263-5122
228. Fax: 847-675-2253    Fax: 312-263-0023

CHI1 #139360v2    4

LIST OF ITEMS FOR WHITE HOUSE, 732 FOREST GLEN

## 1. BASEMENT

a. CERAMIC TILE OF FLOOR

b. ~~BATTERY BACK UP FOR SUBPUMP~~

c. ~~FRIDGE REPLACED~~ removed

d. REPLACE AND PAINT ANY BASEBOARD/MOLDING WITH WATER DAMAGE

## 2. OUTSIDE

a. CLEAN AND SECURE GUTTERS
b. POWER WASH AND PAINT
c. REPLACE OR PUT JACUZZI IN WORKING ORDER
d. LEVEL PAVERS IN BACK YARD
e. CUT DOWN OVER GROWTH OF FOLIAGE DUE TO LACK OF UPKEEP

## 3. MAIN LEVEL

a. BATHROOM FAN BROKEN
b. REPAIR GARAGE DOOR
c. REPAIR LIGHT IN GARAGE
d. REPAIR DOORBELL
e. REPAIR SCREEN DOOR IN LAUNDRY ROOM

## 4. STAIRWELL

a. CLEAN OR REPLACE CARPET
b. SECURE BANISTER

## 5. SECOND LEVEL

a. CLEAN OR REPLACE CARPET

b. PUT SHOWER HEAD IN SECOND BATHROOM
c. REPAIR WALL IN 3RD BEDROOM
d. REPAIR/REALIGN CLOSET DOOR IN 3RD BEDROOM
e. FIX/REPLACE LIGHT FIXTURE IN MASTER BEDROOM CLOSET

# RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY SELLER CREATES LEGAL OBLIGATIONS ON SELLER THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: 732 Forest Glen Ln
City, State & Zip Code: Oak Brook, IL 60523
Seller's Name: SNI & Associates

This report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of _____ 20__, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect) or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| | YES | NO | N/A | |
|---|---|---|---|---|
| 1. | | ✓ | | Seller has occupied the property within the last 12 months. (No explanation is needed) |
| 2. | | ✓ | | I am aware of flooding or recurring leakage problems in the crawlspace or basement. |
| 3. | | ✓ | | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | | ✓ | | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | | ✓ | | I am aware of leaks or material defects in the roof, ceilings or chimney. |
| 6. | | ✓ | | I am aware of material defects in the walls or floors. |
| 7. | | ✓ | | I am aware of material defects in the electrical system. |
| 8. | | ✓ | | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | | ✓ | | I am aware of material defects in the well or well equipment. |
| 10. | | ✓ | | I am aware of unsafe conditions in the drinking water. |
| 11. | | ✓ | | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | | ✓ | | I am aware of material defects in the fireplace or woodburning stove. |
| 13. | | ✓ | | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | | ✓ | | I am aware of unsafe concentrations of radon on the premises. |
| 15. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | | ✓ | | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | | ✓ | | I am aware of current infestations of termites or other wood boring insects. |
| 19. | | ✓ | | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | | ✓ | | I am aware of underground fuel storage tanks on the property. |
| 21. | | ✓ | | I am aware of boundary or lot line disputes. |
| 22. | | ✓ | | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:

_____

_____

Check here if additional pages used: _____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: _____ Date: 5-4-07
Seller: _____ Date: _____

PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____ Date: 4-9-07 Time: _____
Prospective Buyer: _____ Date: _____ Time: _____

108 Revised 1/00     COPYRIGHT © ILLINOIS ASSOCIATION OF REALTORS®



# DISCLOSURE OF INFORMATION ON RADON HAZARDS
### (For Residential Real Property Sales or Purchases)

**Radon Warning Statement**

*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.*

*The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.*

**Seller's Disclosure (initial each of the following which applies)**

_____ (a) Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).

_____ (b) Seller has provided the purchaser with all available records and reports pertaining to elevated radon concentrations within the dwelling.

_____ (c) Seller has no knowledge of elevated radon concentrations in the dwelling.

_____ (d) Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment (initial each of the following which applies)**

_____ (e) Purchaser has received copies of all information listed above.

_____ (f) Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement (initial if applicable)**

_____ (g) Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

Seller _____   Date _1-2-08_

Seller _____   Date _____

Purchaser _____   Date _4/6/08_

Purchaser _____   Date _____

Agent _____   Date _____

Agent _____   Date _____

1732 Forest Glen Lane
Oak Brook

FORM 422

COPYRIGHT ILLINOIS ASSOCIATION OF REALTORS

Check Number:    10008
Check Date:    Jul 31, 2008
Check Amount:    $30,000.00

| Item to be Paid - Description | Discount Taken | Amount Paid |
|---|---|---|
| EQUIPMENT PURCHASES | | 30,000.00 |

**10008**

## MIDWEST LEASING OF OAK BROOK INC.

ACCOUNTING OFFICE
55 W. WACKER DR. - SUITE 1120
CHICAGO, ILLINOIS  60601
(312) 388-2810

Check Number:    10008

THE PRIVATE BANK
AND TRUST COMPANY
TEN NORTH DEARBORN
CHICAGO, IL  60602
2-848/710

DATE
Jul 31, 2008

AMOUNT
30,000.00

Memo:

Thirty Thousand and 00/100 Dollars

PAY
TO THE
ORDER
OF:     SCHILLER REALTY
        ELMHURST, IL  60126

AUTHORIZED SIGNATURE

⑈O10008⑈ ⑈071008486⑈ 101262⑈

MIDWEST LEASING OF OAK BROOK INC.

**10008**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SH & ASSOCIATES, INC.,                )
an Illinois Corporation,              )       Case No. 08-cv-4767
                                      )
            Plaintiff,                )       Honorable Judge Andersen
                                      )
                                      )
    v.                                )       Magistrate Judge Cole
                                      )
UNITED STATES OF AMERICA,             )
                                      )
            Defendant,                )

### AFFIDAVIT OF SAMY HAMMAD

I, Samy Hammad, being duly sworn, state:

1.    At all relevant times discussed herein, I have been the president of S.H. & Associates, Inc. ("SH").

2.    I am submitting this Affidavit in support of, and adopt the statements in SH's Verified Motion for Temporary Restraining Order.

3.    SH is an Illinois corporation that was formed and organized in 1990, and is in the business of buying, selling, and developing single family properties, multi-residence properties, and commercial properties.

4.    I have never been a shareholder or director of SH.

5.    I have been the President of SH since 1990 but I have never received a salary or any other compensation from SH.  I have the limited role of entering into contracts and signing checks on behalf of SH.

6.    I have never borrowed monies from or loaned monies to SH.

7.    I never had an ownership or title interest in any of the following properties:



EXHIBIT
2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 732 Forest Glen | Oak Brook | IL | 60523 | DuPage | 06-24-208-079 | $530,000 |
| 40 N. Tower Road Unit 7N | Oak Brook | IL | 60523 | DuPage | 06-28-108-321 | $200,000 |
| 537 E. Park Ave. | Elmhurst | IL | 60126 | DuPage | 06-01-412-044 | $300,000 |
| 443 N. Emery Lane | Elmhurst | IL | 60126 | DuPage | 03-35-305-013 | $750,000 |
| 10S521 Dunham Drive | Downers Grove | IL | 60516 | DuPage | 10-06-303-008 | $385,000 |
| 929 Ashford Lane | Westmont | IL | 60559 | DuPage | 09-15-304-033 | $300,000 |
| 345 W. Superior St. Unit A | Chicago | IL | 60610 | Cook | 17-09-207-006-1009 | $500,000 |
| 123 E. 43rd Street | Chicago | IL | 60653 | Cook | 20-03-302-026-0000 | $200,000 |
| 3954 W. Lake Street | Chicago | IL | 60624 | Cook | 16-11-300-020-0000 | $300,000 |
| 350 N. Cicero Ave. | Chicago | IL | 60644 | Cook | 16-09-402-025-0000 | $300,000 |
| 5100 S. Paulina St. | Chicago | IL | 60609 | Cook | 20-07-405-022-0000 | $500,000 |
| 15501 70th Court | Orland Park | IL | 60462 | Cook | 28-18-100-047-1001 | $300,000 |
| 8356 S. Kilbourn Ave. | Chicago | IL | 60652 | Cook | 19-34-329-037-0000 | $180,000 |
| 3428 W. 135th Street | Robbins | IL | 60472 | Cook | 24-35-408-017-0000 | $150,000 |
| 1816 St. Charles Road | Maywood | IL | 60153 | Cook | 15-10-127-004-0000 | $225,000 |
| 1816 St. Charles Road | Maywood | IL | 60153 | Cook | 15-10-127-003-0000 | N/A |
| 1816 St. Charles Road | Maywood | IL | 60153 | Cook | 15-10-127-002-0 | N/A |

(collectively, hereinafter referred to as the Properties").

8.     I never received the proceeds from the sales of any properties that SH ever owned, and rather those proceeds were always deposited into SH's bank accounts.

9.     I never used any property owned by SH as security for any loans that were made on my behalf or on the behalf of any of my other related entities.

10.     I never bought any properties in which SH had an interest from SH.

2

11.    I never sold any properties in which I had an interest to SH.

12.    I entered into a Consent Judgment with the IRS in or about April, 2005, for unpaid taxes related to my company, All American Corporation, in the total amount of $1,003,937.30 ("Consent Judgment").

13.    Although prior to the time that Consent Judgment was executed, the IRS investigated my involvement and interest in SH, the IRS failed to obtain or request that a judgment be entered against SH.

14.    Due to the fact that SH is an entity solely independent and unrelated to me, the Federal Tax Lien filed by the IRS in or about January, 2008, is wholly improper and serves an improper encumbrance on the assets of SH.

15.    Omar Hammad has read every allegation in this affidavit to me over the phone, because I am currently in Egypt with no internet or fax capabilities. I agree with every allegation in this affidavit and give Omar Hammad my full authority and consent to sign this affidavit on my behalf.

16.    I have personal knowledge of the statements made in this affidavit and if called as a witness, I am competent to testify to the matters stated.

_____
Omar Hammad on behalf of
Samy Hammad

SUBSCRIBED AND SWORN TO
before me this ___3rd___ day
of September, 2008

_____
NOTARY PUBLIC

> OFFICIAL SEAL
> HAVA WEISSBERG
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:10/05/10

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------X

DAVID A. URBAN,

      Plaintiff and
      Counterclaim Defendant

    v.                               Civil Action No.: 03-cv-6630

UNITED STATES OF AMERICA,

      Defendant, Counterclaimant,
      and Third-Party Plaintiff,         Magistrate Judge: Ashman

    v.

SAMY HAMMAD,

      Counterclaim Defendant
      and Third-party Defendant.
-------------------------------------------------X

## CONSENT JUDGMENT

Defendant, counterclaimant and third-party plaintiff, United States of America, and counterclaim defendant and third-party defendant, Samy Hammad, stipulate that judgment be entered in favor of the United States as follows:

    1.     Against Samy Hammad, in the amount of $340,296.01, plus interest accruing, as provided by 26 U.S.C. §§6601, 6621, from March 27, 2002 through date of entry of judgment, for assessed and unpaid 26 U.S.C. §6672 trust fund recovery tax penalties which relate to the unpaid employment tax liabilities of All American Corporation, for employment tax quarter ending September 30, 1991, with interest to accrue on such amount after the entry of judgment as provided by 28 U.S.C. §1961(c)(1).

EXHIBIT
3

- 2 -

2.    Against Samy Hammad, in the amount of $151,809.01, plus interest accruing, as provided by 26 U.S.C. §§6601, 6621, from March 27, 2002 through date of entry of judgment, for assessed and unpaid 26 U.S.C. §6672 trust fund recovery tax penalties which relate to the unpaid employment tax liabilities of All American Corporation, for employment tax quarter ending December 31, 1991, with interest to accrue on such amount after the entry of judgment as provided by 28 U.S.C. §1961(c)(1).

3.    Against Samy Hammad, in the amount of $30,000.00, plus interest accruing, as provided by 26 U.S.C. §§6601, 6621, from March 27, 2002 through date of entry of judgment, for assessed and unpaid 26 U.S.C. §6672 trust fund recovery tax penalties which relate to the unpaid employment tax liabilities of All American Corporation, for employment tax quarter ending March 31, 1992, with interest to accrue on such amount after the entry of judgment as provided by 28 U.S.C. §1961(c)(1).

4.    Against Samy Hammad, in the amount of $99,999.98, plus interest accruing, as provided by 26 U.S.C. §§6601, 6621, from March 27, 2002 through date of entry of judgment, for assessed and unpaid 26 U.S.C. §6672 trust fund recovery tax penalties which relate to the unpaid employment tax liabilities of All American Corporation, for employment tax quarter ending December 31, 1992, with interest to accrue on such amount after the entry of judgment as provided by 28 U.S.C. §1961(c)(1).

5.    Against Samy Hammad, in the amount of $134,721.87, plus interest accruing, as provided by 26 U.S.C. §§6601, 6621, from February 4, 2000 through date of entry of judgment, for assessed and unpaid 26 U.S.C. §6672 trust fund recovery tax

- 3 -

penalties which relate to the unpaid employment tax liabilities of All American

Corporation, for employment tax quarters ending June 30, 1995, with interest to accrue

on such amount after the entry of judgment as provided by 28 U.S.C. §1961(c)(1).

6.    Against Samy Hammad, in the amount of $247,110.41, plus interest

accruing, as provided by 26 U.S.C. §§6601, 6621, from February 4, 2000 through date

of entry of judgment, for assessed and unpaid 26 U.S.C. §6672 trust fund recovery tax

penalties which relate to the unpaid employment tax liabilities of All American

Corporation, for employment tax quarter ending September 30, 1995, with interest to

accrue on such amount after the entry of judgment as provided by 28 U.S.C.

§1961(c)(1).

7.    The parties shall bear their respective costs, including any attorney's fees

or other expenses stemming from this litigation.

ATTORNEY FOR DEFENDANT,
COUNTERCLAIMANT and THIRD-
SAVERIO PARTY PLAINTIFF
UNITED STATES OF AMERICA,


BARTHOLOMEW CIRENZA
Trial Attorney
U.S. Department of Justice, Tax Division
PO Box 55, Ben Franklin Station
Washington, DC 20044
Tel. No.: (202) 307-6503

ATTORNEY FOR COUNTERCLAIM
DEFENDANT and THIRD-PARTY
DEFENDANT SAMY HAMMAD


ARIEL WEISSBERG
WEISSBERG & ASSOCIATES
401 SOUTH LASALLE STREET
SUITE 403
CHICAGO, IL 60605
Tel. No.: (312) 663-0004

IT IS SO ORDERED, this 25th day of April, 2005, by


HON. MARTIN C. ASHMAN
United States Magistrate Judge
Northern District of Illinois

Samy Hammad

**Internal Revenue Service**
2001 Butterfield Road
WSB:5223:Webster
Downers Grove, IL. 60515

**Department of the Treasury**

**Date:** January 31, 2008

**S H & ASSOCIATES INC**
2 SHELBURNE DR
OAK BROOK, IL. 60523-1747

Person to Contact:
  Ms. B. Webster
IRS Telephone Number:
  630-493-5846
Employee Identification Number:
  36-07236
Taxpayer Identification Number
  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

### Notice of Federal Tax Lien Filing--Nominee or Alter-Ego

You have been identified as the nominee or alter-ego for Samy Hammad. This letter is to inform you that we have filed a Notice of Federal Tax Lien.

You have the right to appeal this decision. We explain your rights in the enclosed Publication 1660.

There may be other ways that we can resolve this issue. Contact the person named above for further information.

One option you have is to request a Certificate of Discharge from the Federal Tax Lien. However, before we will issue a discharge, you must pay the amount due or post a bond guaranteeing payment. The enclosed Publication 783, provides information on how to request a certificate of discharge.

We will issue a Certificate of Release of Federal Tax Lien within 30 days after you pay the full amount due or within 30 days after we accept a bond guaranteeing payment.

Sincerely yours,

B. Webster
Revenue Officer

Enclosures:
Publication 1660, Collection Appeal Rights
Publication 783, Instruction on How to Apply for a Certificate of Discharge From Federal Tax Lien
Form 668(Y), Notice of Federal Tax Lien

Letter 3177 (DO) (Rev. 04-2003)
Catalog Number: 26921M


EXHIBIT
4

| Form **668(Y)** | Department of the Treasury - Internal Revenue Service | |
|---|---|---|
| (Rev. 10-1999) | **Notice of Federal Tax Lien** | |

| Small Business/Self Employed Area: 4 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

**Name of Taxpayer**
S H & Associates Inc. as the alter ego Samy Hammad

**Residence**
2 Shelburne Drive
Oak Brook, IL 60523-1747

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ended (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| CIVP | 09/30/1991 | 36-3758827 | 03/27/2002 | | $341,648.42 |
| CIVP | 12/31/1991 | 36-3758827 | 03/27/2002 | | $152,459.98 |
| CIVP | 03/31/1992 | 36-3758827 | 03/27/2002 | | $30,128.48 |
| CIVP | 12/31/1992 | 36-3758827 | 03/27/2002 | | $100,428.26 |
| CIVP | 06/30/1995 | 36-3758827 | 03/27/2002 | | $135,298.85 |
| CIVP | 09/30/1995 | 36-3758827 | 03/27/2002 | | $248,168.73 |
| CIVP | 12/31/1995 | 36-3758827 | 03/27/2002 | | $243,444.72 |

| Place of Filing | | | |
|---|---|---|---|
| Recorder of Deeds DuPage County Wheaton IL | | Total | $1,251,577.44 |

This notice was prepared and signed at 2001 Butterfield Road, Downers Grove, IL 60515, on this, the 31st day of January, 2008.

| Signature | Title |
|---|---|
| B. Webster, Employee #36-07236 *B. Webster* | Revenue Officer, Phone #630-493-5646 |

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 2 – Taxpayer Copy          Form **668(Y)** (Rev. 10-1999)

## S.H. & Associates Inc. Properties

|      | Street Address | City | State | Zip | County |
|------|----------------|------|-------|-----|--------|
| 1.)  | 732 Forest Glen | Oak Brook | IL | 60523 | DuPage |
| 2.)  | 40 N. Tower Road Unit 7N | Oak Brook | IL | 60523 | DuPage |
| 3.)  | 537 E. Park Ave. | Elmhurst | IL | 60126 | DuPage |
| 4.)  | 443 N. Emery Lane | Elmhurst | IL | 60126 | DuPage |
| 5.)  | 10S521 Dunham Drive | Downers Grove | IL | 60516 | DuPage |
| 6.)  | 929 Ashford Lane | Westmont | IL | 60559 | DuPage |
| 7.)  | 345 W. Superior St. Unit A | Chicago | IL | 60610 | Cook |
| 8.)  | 123 E. 43rd Street | Chicago | IL | 60653 | Cook |
| 9.)  | 3954 W. Lake Street | Chicago | IL | 60624 | Cook |
| 10.) | 350 N. Cicero Ave. | Chicago | IL | 60644 | Cook |
| 11.) | 5100 S. Paulina St. | Chicago | IL | 60609 | Cook |
| 12.) | 15501 70th Court | Orland Park | IL | 60462 | Cook |
| 13.) | 8356 S. Kilbourn Ave. | Chicago | IL | 60652 | Cook |
| 14.) | 3426 W. 135th Street | Robbins | IL | 60472 | Cook |
| 15.) | 1816 St. Charles Road | Maywood | IL | 60153 | Cook |
|      | 1816 St. Charles Road | Maywood | IL | 60153 | Cook |
|      | 1816 St. Charles Road | Maywood | IL | 60153 | Cook |



EXHIBIT

5

**WEISSBERG AND ASSOCIATES, LTD.**

401 South LaSalle
Suite 403
Chicago, Illinois 60605

Telephone: 312/663-0004
Facsimile: 312/663-1514
E-Mail:
ariel@weissberglaw.com

March 3, 2008

Ms. B. Webster
Internal Revenue Service
2001 Butterfield Road
WSB: 5223: Webster
Downers Grove, IL  60515

BY 1ST CLASS CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Receipt #7007 0710 0001 8931 4297

Re:    **S H & Associates, Inc., 2 Shelburne Dr., Oak Brook, Illinois, 60523**
       **Employee Identification Number: 36-07236**
       **Taxpayer Identification Number:  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**

Dear Ms. Webster:

I am enclosing a Request for a Collection Due Process or Equivalent Hearing for the above-named taxpayer.  I will forward under separate letter my Power of Attorney.

Please contact me.

Yours truly,

Ariel Weissberg, for
S H & Associates, Inc.

AW/hw

cc:    Mr. Omar Hammad

**EXHIBIT**

tabbies®

6

# Request for a Collection Due Process or Equivalent Hearing

Use this form to request a Collection Due Process (CDP) or equivalent hearing with the IRS Office of Appeals if you have been issued one of the following lien or levy notices:

- *Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320,*
- *Notice of Intent to Levy and Notice of Your Right to a Hearing,*
- *Notice of Jeopardy Levy and Right of Appeal,*
- *Notice of Levy on Your State Tax Refund- Notice of Your Right to a Hearing.*

Complete this form and send it to the address shown on your lien or levy notice. Include a copy of your lien or levy notice to ensure proper handling of your request.

Call the phone number on the notice or 1-800-829-1040 if you are not sure about the correct address or if you want to fax your request.

You can find a section explaining the deadline for requesting a Collection Due Process hearing in this form's instructions. If you've missed the deadline for requesting a CDP hearing, you must check line 6 (Equivalent Hearing) to request an equivalent hearing.

**1. Print Name:** SH & Associates, Inc.

If a husband and wife owe the tax liability jointly, please print both names if both want a hearing.

**Address:** 2 Shelburne Drive

City: Oak Brook    State: Illinois    Zip Code: 60523

**2. Social Security Number or Numbers**

SSN 1      SSN 2

Employer Identification Number: 36-07236

**3. Daytime Telephone Number and Best Time to Call**

( 312 ) 663 - 0004      ☒ am. ☐ pm.

**4. Tax Information**

| Type of Tax (Income, Employment, Excise, etc. or Civil Penalty) | Tax Form Number (1040, 941, 720, etc) | Tax Period or Periods |
|---|---|---|
| Employment/Civil Penalty | 941 | 9-30-91, 12-31-91, 3-31-92, 12-31-92, 6-30-95 |
| | | 9-30-95, 12-31-95 |
| | | |
| | | |

Form **12153** (Rev. 11-2006)    Catalog Number 26685D    www.irs.gov    Department of the Treasury - Internal Revenue Service

# Request for a Collection Due Process or Equivalent Hearing

**5. Basis for Hearing Request** (Both boxes can be checked if you have received both a lien and levy notice)

[X] Filed Notice of Federal Tax Lien      [ ] Proposed Levy or Actual Levy

**6. Equivalent Hearing** (See the instructions for more information on Equivalent Hearings)

[ ] I would like an Equivalent Hearing – I would like a hearing equivalent to a CDP Hearing if my request for a CDP hearing is too late.

**7.** Check the most appropriate box for the reason you disagree with the filing of the lien or the levy. **See page 4 of this form for examples.** You can add more pages if you don't have enough space.

| Collection Alternative | [ ] Installment Agreement | [ ] Offer in Compromise |
|---|---|---|

| Lien | [ ] Subordination   [ ] Discharge   [X] Withdrawal |
|---|---|

Please explain: Contrary to the statement on the tax lien, the tax payer is not an alter ego or nominee of Samy Hammad.

| My Spouse Is Responsible | [ ] Innocent Spouse Relief (Please attach Form 8857, *Request for Innocent Spouse Relief,* to your request.) |
|---|---|

| Other | [X] Reason: |
|---|---|

(Use as much space as you need to explain the reason for your request. Attach extra pages if necessary.)

Samy Hammad provided to the IRS information evidencing that SH & Associates, Inc. is not an alter ego or the nominee of Samy Hammad. Despite this clear and convincing proof contravening the IRS' position taken in the Notice of Federal Tax Lien Filing, the IRS has pursued its alleged claims wrongfully against SH & Associates, Inc.

I understand the CDP hearing and any subsequent judicial review will suspend the statutory period of limitations for collection action. I also understand my representative or I must sign and date this request before the IRS Office of Appeals can accept it.

**SIGN HERE**

Your Signature _Arul Weisberg, authorized representative_    Date 3-3-08

Spouse's Signature (if a joint request, both must sign)    Date

**IRS Use Only:**

| IRS Employee (Print) | Employee Telephone Number | IRS Received Date |
|---|---|---|

Form **12153** (Rev. 11-2006)    Catalog Number 26685D    www.irs.gov    Department of the Treasury - **Internal Revenue Service**

| Form **668(Y)**<br>(Rev. 10-1999) | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | |
|---|---|---|

| Small Business/Self Employed Area: 4 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

**Name of Taxpayer**

S H & Associates Inc. as the alter ego Samy Hammad

**Residence**

2 Shelburne Drive
Oak Brook, IL 60523-1747

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period Ended<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| CIVP | 09/30/1991 | 36-3758827 | 03/27/2002 | | $341,648.42 |
| CIVP | 12/31/1991 | 36-3758827 | 03/27/2002 | | $152,459.98 |
| CIVP | 03/31/1992 | 36-3758827 | 03/27/2002 | | $30,128.48 |
| CIVP | 12/31/1992 | 36-3758827 | 03/27/2002 | | $100,428.26 |
| CIVP | 06/30/1995 | 36-3758827 | 03/27/2002 | | $135,298.85 |
| CIVP | 09/30/1995 | 36-3758827 | 03/27/2002 | | $248,168.73 |
| CIVP | 12/31/1995 | 36-3758827 | 03/27/2002 | | $243,444.72 |

| Place of Filing<br>Recorder of Deeds<br>DuPage County<br>Wheaton IL | Total | $1,251,577.44 |
|---|---|---|

This notice was prepared and signed at 2001 Butterfield Road, Downers Grove, IL 60515, on this, the 31st day of January, 2008.

| Signature<br>B. Webster, Employee #36-07236 | Title<br>Revenue Officer, Phone #630-493-5646 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 2 - Taxpayer Copy                                                                    Form **668(Y)** (Rev. 10-1999)

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**A. Received by** *(Please Print Clearly)* | **B. Date of Delivery**

**C. Signature**
X
☐ Agent
☐ Addressee

**D. Is delivery address different from item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No

**1. Article Addressed to:**

Ms. B. Webster
Internal Revenue Service
2001 Butterfield Rd.
WSB: 5223: Webster
Downer's Grove IL 60515

**3. Service Type**
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

**4. Restricted Delivery?** *(Extra Fee)* ☐ Yes

**2. Article Number** *(Copy from service label)*
7007 0710 0001 8931 4297

PS Form 3811, July 1999    Hammad    Domestic Return Receipt    102595-00-M-0952

401 SOUTH LASALLE
SUITE 403
CHICAGO, ILLINOIS 60605

7007 0710 0001 8931 4297

Ms. B. Webster
Internal Revenue Service
2001 Butterfield Road
WSB: 5223: Webster
Downers Grove, IL  60515

ERG AND ASSOCIATES, LTD.
401 SOUTH LASALLE
SUITE 403
CHICAGO, ILLINOIS 60605

7007 0710 0001 8931 4297



02 1P                    **$005.21**
0003307676  MAR 03 2008
MAILED FROM ZIP CODE 60605

Ms. B. Webster
Internal Revenue Service
2001 Butterfield Road
WSB: 5223: Webster
Downers Grove, IL  60515

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Received by (Please Print Clearly)  TONY LACH   B. Date of Delivery 3-5-8 <br> C. Signature  X _____  □ Agent  □ Addressee |
| 1. Article Addressed to: <br><br> Ms. B. Webster <br> Internal Revenue Service <br> 2001 Butterfield Rd. <br> WSB: 5223: Webster <br> Downer's Grove IL 60515 | D. Is delivery address different from item 1?  □ Yes <br> If YES, enter delivery address below:  □ No <br><br> 3. Service Type <br> ☒ Certified Mail    □ Express Mail <br> □ Registered    ☒ Return Receipt for Merchandise <br> □ Insured Mail    □ C.O.D. <br> 4. Restricted Delivery? (Extra Fee)    □ Yes |
| 2. Article Number (Copy from service label) | 7007 0710 0001 8931 4 17 |

PS Form 3811, July 1999    *Hammad*    Domestic Return Receipt                102595-00-M-0952

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ 4 | |
| Certified Fee | 2-65 | Postmark Here |
| Return Receipt Fee (Endorsement Required) | 2·15 | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ 5.21 | |

Sent To  Ms Webster @ IRS
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

7007 0710 0001 8931 4297

PS Form 3800, August 2006                See Reverse for Instructions



**REAL ESTATE SALE CONTRACT**
Approved by the CHICAGO ASSOCIATION OF REALTORS'

1. **PARTIES:**
2. SELLER: ~~DBR~~ SH + Associates _____ PURCHASER: Midwest Leasing of Oak Brook, Inc.
3. ADDRESS: 2 Shelbyrne _____ ADDRESS: 55 W. Wacker Drive #1120
4. Oak Brook, IL 60523 _____ Chicago, IL 60601
5. Purchaser and Seller are hereinafter sometimes referred to as the "Parties."
6. Purchaser hereby agrees to purchase and Seller agrees to sell the following described real estate, on the terms and conditions
7. herein set forth.
8. **DESCRIPTION OF PROPERTY:**
9. **TYPE OF PROPERTY** (check one): ✓ Single Family _____ Condominium ✗ Townhouse
10. _____ Multi-Family _____ Vacant Lot
11. STREET ADDRESS ,732 FOREST GLEN LANE, OAK BROOK, IL 60523
12. (Include "Unit Number" if condominium or townhouse)          (CITY)                    (STATE)
13. LOT SIZE: APPROXIMATELY 55 ___ X 133 ___ X 163 ___ X 160 ___ X ___ X ___ FEET.
14. LEGAL DESCRIPTION: The Parties agree that the correct legal description may be attached at any time hereinafter.
15. IMPROVED WITH _____
16. together with all appurtenances attached to and forming a part of the premises, for which Seller shall deliver a Bill of Sale at time
17. of delivery of deed: existing heating, plumbing, electrical lighting fixtures, storm windows, storm doors and screens, if any;
18. drapery rods, curtain rods, if any; fencing, if any; attached air conditioners, if any; attached outside antenna, if any; water softener
19. (except rental units), if any; all planted vegetation; ceiling fans, if any, automatic garage door system and all related remote
20. hand-held units, if any; and specifically including the following items of personal property now on the premises:
21. oven/range, microwave,refrigerator, dishwasher, washer, dryer, disposal _____
22. _____
23. **PRICE AND TERMS:**
24. PURCHASE PRICE *See attached contigency _____ $ 665,000
25. EARNEST MONEY DEPOSIT _____ $ 30,000
26. In the form of (cash), (personal check), (cashier's check) or (Judgment note due _____ ) $ 30,000
27. _____ $ _____
28. BALANCE DUE AT CLOSING _____ $ 635,000
29. **FINANCING:**
30. This Contract is contingent upon Purchaser securing within N/A _____ ( _____ ) days of acceptance
31. hereof a written mortgage commitment on the real estate herein in the amount of $ _____ or such lesser sum as
32. Purchaser accepts, with interest not to exceed _____ % per year, to be amortized over _____ years, the combined origination
33. and discount fees for such loan not to exceed _____ %, plus loan processing fees, if any. Purchaser shall make written
34. application for such loan within ten (10) days from date of acceptance of this Contract, shall cooperate with the lender in supplying
35. all necessary information and documentation; and shall diligently attempt to obtain the mortgage described herein. In the event
36. Purchaser is unable to secure such loan commitment, Purchaser shall provide written notice of same to Seller or Seller's attorney.
37. Seller may, at Seller's option, within an equal number of additional days, procure for Purchaser such a commitment or notify
38. Purchaser that Seller will accept a purchase money mortgage upon the same terms. In the event neither Purchaser nor Seller secure
39. such loan commitment as herein provided within the time allowed, then this Contract shall become null and void and all earnest
40. money shall be returned to Purchaser. Purchaser shall be allowed to have a mortgage or trust deed placed of record prior to
41. closing, but any delays caused thereby shall not constitute a default by Seller. Seller must allow reasonable inspection of the
42. premises by Purchaser's financing agent. Unless a contingent upon sale/closing provision is attached and made part of this
43. Contract, Purchaser represents that Purchaser's ability to obtain financing is not subject to the sale, closing, or rental of any other
44. real estate. Purchaser will be deemed to be in default if Purchaser obtains a loan commitment conditioned upon the sale, closing, or
45. rental of other real estate, and fails to close this transaction is agreed.
46. **CLOSING:**
47. The closing shall be on or before ASAP 8·24·08 _____ at the office of Purchaser's lender, or Title Company
48. **POSSESSION:** (Select one applicable option)
49. Seller shall deliver possession to Purchaser at closing, OR
50. Seller shall deliver possession to Purchaser within N/A _____ ( _____ ) days from date of
51. closing. Seller agrees to pay Purchaser for use and occupancy the sum of $ _____ per day for each day after
52. closing that Seller retains possession. Seller shall be responsible for heat, utilities and home maintenance expenses during such

©2002 Chicago Association of REALTORS®
All Rights Reserved

Revised 02/02



EXHIBIT
7

53. period, and shall deliver possession of the real estate in the same condition as it is in, on the date of closing. Should Seller
54. fail to deliver possession to Purchaser as agreed, Seller shall pay to Purchaser beginning on the N/A _____ day after closing,
55. the sum of $ _____ per day until possession is delivered to Purchaser and Purchaser shall, in addition to
56. all other remedies, have the immediate right to commence any legal action or proceeding calculated to evict and remove Seller
57. from the premises. Seller agrees to waive all notices required by the Forcible Entry and Retainer Act or any other statute, and
58. consents to an immediate judgment for possession. Seller further agrees to reimburse Purchaser for all reasonable attorneys' fees
59. and court costs Purchaser may incur in the enforcement of Purchaser's rights pursuant to this provision.
60. Seller shall deposit the sum of $ _____ in escrow with _____, as Escrowee,
61. at the time of closing, and any monies due Purchaser for Seller's use and occupancy hereunder shall be paid to Purchaser
62. from this deposit and the balance, if any, shall be refunded to Seller. Possession shall be deemed delivered to Purchaser
63. when Seller, has vacated the premises and delivered the keys to Purchaser or the Escrowee. Escrow money shall be limited to
64. delivery of possession, and funds held pursuant to this paragraph shall be used only to satisfy payment for use and occupancy.

65. **TITLE EVIDENCE:**
66. Seller, at Seller's expense, shall furnish not less than five (5) days prior to the closing date, a title commitment for an owners title
67. insurance policy issued by an Illinois licensed title insurance company in the amount of the purchase price covering the date hereof
68. subject only to (a) the general exceptions contained in the title policy (except that, where the subject property qualifies as a single
69. family residential unit, the policy shall provide extended coverage over the general exceptions); (b) the title exceptions set forth
70. below; and (c) title exceptions pertaining to liens or encumbrances which have been assumed by Purchaser under the terms hereof
71. or which Seller has agreed to remove at closing from the proceeds hereunder. Any delay in delivery of the title commitment which
72. is caused by Purchaser, Purchaser's agent, or Purchaser's lending agency shall extend the time for delivery thereof by Seller for
73. such period of delay. If the title commitment discloses exceptions not provided for herein, Seller shall have until closing to
74. remove such exceptions or to acquire title insurance covering such unpermitted exceptions. If Seller fails to remove such
75. exceptions or obtain additional insurance within the time stated herein, Purchaser may elect to terminate this Contract and all
76. monies paid by Purchaser shall be refunded to Purchaser.

77. **DEED (CONVEYANCE, LIENS, ENCUMBRANCES):**
78. Seller shall convey or cause to be conveyed to Purchaser title to the premises by a recordable general warranty deed with release
79. of homestead rights, or trustee's deed if applicable, in joint tenancy, if more than one Purchaser, or to Purchaser's nominee, subject
80. only to the following permitted exceptions, provided none of which shall materially restrict the reasonable use of the premises as a
81. residence: (a) general real estate taxes not due and payable at the time of closing; (b) building lines and building laws and
82. ordinances, use or occupancy restrictions, conditions and covenants of record; (c) zoning laws and ordinances which conform to
83. the present usage of the premises; (d) public and utility easements which serve the premises; (e) public roads and highways, if any;
84. (f) party wall rights and agreements, if any, and (g) limitations and conditions imposed by the Illinois Condominium Property Act
85. and condominium declaration, if applicable.

86. **PRORATIONS:**
87. The following items, if applicable, shall be prorated as of the date of closing: (a) insurance premiums; (b) general real estate taxes,
88. including special service areas, if any; (c) rents and security deposits; (d) interest on mortgage indebtedness assumed; (e) water
89. taxes; (f) homeowners and/or condominium/townhome association dues and assessments; (g) prepaid service contracts. Prorations
90. of general taxes shall be on the basis of 105% of the last ascertainable bill. If such bill is based on a partial assessment or on an
91. unimproved basis for improved property, a written agreement (with escrow) for final proration when the complete assessment
92. information is available from the County Assessor shall be signed at closing by the parties hereto.

93. **SURVEY:**
94. Seller, at Seller's expense, except for condominiums, shall furnish to Purchaser a current spotted survey (dated not more than 6
95. months prior to the closing date) under certification by an Illinois licensed land surveyor showing the location of all improvements,
96. easements and building lines. The location of all improvements on the subject property shall be within the lot lines and not
97. encroach upon any easements or building lines, and such survey shall show no encroachments from adjoining properties. In the
98. event such survey discloses encroachments, these encroachments shall be insured by the title company for Purchaser and
99. Purchaser's lender at Seller's expense.

100. **COMMISSION:**
101. Real estate broker's commission shall be paid in accordance with the terms of the listing agreements and buyer representation
102. agreements of the respective parties, unless otherwise agreed in writing by the respective parties and their brokers. Seller's broker
103. and Purchaser's broker are identified after the execution section of this Contract.

104. **ATTORNEY MODIFICATION:**
105. The terms of this Contract, except the purchase price, closing date, and possession date, are subject to good faith modification
106. (which may include additional terms) by the attorneys for the parties within five (5) business days from the Contract Date
107. (excluding Saturday, Sunday, and legal holidays). Notice of modification shall be in writing, served upon the other party or such
108. party's agent, and shall state the specific terms to be modified and the proposed revisions. IN THE ABSENCE OF WRITTEN
109. NOTICE WITHIN THE TIME SPECIFIED HEREIN, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES
110. HERETO AND THIS CONTRACT SHALL CONTINUE IN FULL FORCE AND EFFECT. THE PARTIES ACKNOWLEDGE THAT
111. MODIFICATION PURSUANT TO THIS PROVISION SHALL CONSTITUTE A COUNTEROFFER.

2

112. **CLEAN CONDITION:**
113. Seller shall leave the premises in broom-clean condition. All personal property not to be conveyed to Purchaser and all refuse shall
114. be removed from the premises at Seller's expense by the possession date.

115. **PROPERTY INSPECTION CONTINGENCY:** (Select one applicable option)
116. Purchaser declines to have a professional property inspection performed, and this Contract shall not be contingent upon such
117. an inspection,
118.                                                               OR
119. Purchaser shall have the right, for a period of five (5) business days following the date of acceptance of this Contract, to have
120. the subject property and its improvements inspected by a certified home inspection service of Purchaser's choice, and at
121. Purchaser's cost. The home inspection shall cover ONLY the major components of the Premises: central heating system(s),
122. central cooling system(s), interior plumbing system, electrical system, all mechanical systems, and structural components,
123. consisting of roof, walls, windows, ceilings, floors and foundation. A MAJOR COMPONENT SHALL BE DEEMED TO BE IN
124. OPERATING CONDITION IF IT PERFORMS THE FUNCTION FOR WHICH IT IS INTENDED REGARDLESS OF AGE, AND
125. DOES NOT CONSTITUTE A THREAT TO HEALTH OR SAFETY. Purchaser shall indemnify Seller and hold Seller harmless
126. from and against any loss or damage caused by the acts of negligence of Purchaser or any person performing such inspection.
127. PURCHASER AGREES MINOR REPAIRS AND ROUTINE MAINTENANCE ITEMS ARE NOT A PART OF THIS
128. CONTINGENCY. The parties agree that repairs which do not exceed, in the aggregate, $500.00 to remedy shall be considered
129. minor deficiencies for the purpose of this paragraph and Purchaser agrees to assume those repairs with no allowance from Seller.
130. Purchaser, within the five (5) business days after acceptance of Contract, shall have the right and option to serve written notice
131. upon Seller, Seller's listing agent, or attorney of the above deficiencies disclosed by the inspection report when the cumulative
132. cost of repair exceeds the limitation set forth herein, and Purchaser shall have the right to request repair of all such deficiencies.
133. In the event Purchaser makes a request for certain repairs, Purchaser shall immediately deliver a copy of the inspection report to
134. Seller. Seller shall, within five (5) business days thereafter, notify Purchaser that (i) Seller will repair such deficiencies; (ii)
135. Seller will, at closing, credit Purchaser in an amount equal to the reasonable cost of the repair of such deficiencies; or (iii)
136. Seller proposes to negotiate the cost or obligation of correcting certain defects; or (iv) Seller will neither repair nor provide a
137. credit. In the event Seller selects option (iv), upon receipt of Seller's notice, Purchaser shall within two (2) business days
138. thereafter notify Seller of Purchaser's election to either proceed with the transaction, waiving all home inspection repair
139. requests, or declare the Contract null and void, in which case all earnest money shall be promptly refunded to Purchaser. The
140. parties hereto agree that the following items are accepted by Purchaser "As Is", shall not be made a part of Purchaser's request
141. for repairs, and shall not be further negotiated:
142. IN THE ABSENCE OF WRITTEN NOTICE OF REQUEST FOR REPAIRS FROM PURCHASER WITHIN THE TIME
143. SPECIFIED HEREIN, THIS HOME INSPECTION CONTINGENCY SHALL BE DEEMED WAIVED BY PURCHASER AND NO
144. LONGER A PART OF THIS REAL ESTATE SALE CONTRACT.

145. **WELL AND SEPTIC TEST:** (Select one applicable option)
146. The subject property is served by a community or municipal water and sewage treatment system (well and septic test provision
147. inapplicable),
148.                                                               OR
149. The subject property is not served by a community or municipal water and/or sewage treatment system. Seller, at Seller's
150. expense, prior to closing, shall obtain and deliver to Purchaser a water test performed by or acceptable to the county in which
151. the property is located, and a septic system test indicating that the system is in proper operating condition and in compliance
152. with applicable state, county and local statutes. Such tests shall be performed not more than 60 days prior to the closing date.
153. If either of such written tests reports indicate that the water is not potable, that the septic system is not in proper operating
154. condition, or that the systems are not in compliance with the relevant statutes, Seller shall have the option to make the
155. necessary repairs and bring the system(s) into compliance prior to the closing date. In the event Seller elects not to make the
156. necessary repairs, then this Contract, at the option of Purchaser, shall become null and void, and all earnest money shall be
157. refunded to Purchaser.

158. **FLOOD PLAIN:**
159. Purchaser shall have the option of declaring this Contract null and void within five (5) days of receipt of any written notice or
160. disclosure, including the Residential Real Property Disclosure Report, that the property is located in a special flood plain hazard
161. area which requires Purchaser to obtain flood insurance. This option shall not exist in the event such written notice or disclosure
162. was provided in statement number three (3) of a Residential Real Property Disclosure Report executed by both Seller and
163. Purchaser prior to the Contract Date.

164. **PERFORMANCE / DEFAULT / RELEASE OF EARNEST MONEY:**
165. The earnest money and this Contract shall be held by Schiller Realty                    (Escrowee) for the benefit of the parties
166. hereto, and applied to the purchase price at closing. In the event of a default by Seller or Purchaser, the parties are free to pursue
167. any legal remedies available at law or in equity. THERE SHALL BE NO DISBURSEMENT OF EARNEST MONEY UNLESS
168. ESCROWEE HAS BEEN PROVIDED WITH A WRITTEN AGREEMENT FROM SELLER AND PURCHASER. Absent an agreement
169. relative to the disbursement of earnest money within a reasonable period of time, Escrowee may deposit the funds with the Clerk
170. of the Circuit Court by the filing of an action in the nature of an interpleader. Escrowee shall be reimbursed from the earnest money
171. for court costs related to the filing of the interpleader action. Seller and Purchaser hereby indemnify and hold Escrowee harmless
172. from any and all claims and demands arising out of any release of earnest money pursuant to a written agreement of the parties or
173. court order.

3

174. **TERMITE INSPECTION:**
175. Prior to closing, Seller, at Seller's expense, shall deliver to Purchaser a written report from an inspection company certified to do termite
176. inspections by the State Department of Public Health, dated not more than six (6) months prior to the closing date, stating that there is no
177. visible evidence that the premises are infested by active termites, or other wood boring insects. Unless otherwise agreed between the parties, if
178. the report discloses evidence of active infestation or structural damage, Purchaser shall have the option within five (5) business days of
179. Purchaser's receipt of the report to proceed with the purchase or declare this Contract null and void. This provision shall not be applicable to
180. condominiums or to newly constructed property having been occupied for less than one year following completion of construction.

181. **GENERAL CONDITIONS AND STIPULATIONS:**
182. (a) Both Seller and Purchaser agree to execute all documents and provide all information necessary to enable any lender to issue a commitment
183. for mortgage or trust deed and to close this sale.
184. (b) Seller represents that Seller has not received any notice from any governmental body of any ordinance, zoning or building code violation,
185. condemnation proceeding, pending rezoning, or special assessment proceedings affecting the property.
186. (c) All notices herein required shall be in writing and served upon the parties at the addresses shown on this Contract or upon the attorney for
187. such party. In the event the name and address of Seller or the attorney for Seller is unknown, written notice may be served upon the listing
188. broker as agent for Seller. Facsimile transmission of any offer, acceptance, notice, or rider herein provided to the parties, their broker or
189. attorney, shall constitute sufficient notice or acceptance. Original documents shall be forwarded in all instances within three (3) business
190. days of such notice. Notice to any one party of a multiple person party shall be sufficient service to all.
191. (d) This Contract and any Riders attached hereto shall constitute the entire agreement and understanding between Seller and Purchaser, and
192. there are no other agreements, representations, or understandings, oral or written, between the parties with respect to the subject matter of
193. this Contract. No alteration, modification, or amendment to this Contract shall be valid unless in writing and signed by all parties.
194. (e) This Contract shall be binding upon and inure to the benefit of the parties and their respective heirs, successors, legal representatives and
195. permitted assigns.
196. (f) This Contract is subject to the provisions of Public Act 89-111 known as the Residential Real Property Disclosure Act, the terms of which are
197. expressly incorporated herein and made a part of this Contract. Seller represents that the information contained in the disclosure document
198. is accurate as of the Contract Date.
199. (g) The invalidity of any paragraph or subparagraph of this Contract shall not impair the validity of any other paragraph or subparagraph. If any
200. provision of this Contract is determined to be unenforceable by a court, such provision shall be deemed severable and this Contract may be
201. enforced with such provision severed or as modified by such court.
202. (h) Prior to closing, Purchaser shall have the right to enter into and make a final inspection of the premises to determine that the premises are
203. in the condition required by the terms of the Contract. If there has been an adverse change in the condition of the premises since the Contract
204. Date, Seller shall restore the premises to the same condition as it was on the Contract Date, or as called for by the terms of the Contract.
205. (i) Seller shall pay for the State of Illinois and county real estate transfer tax stamps. Any municipal transfer tax shall be paid by the party
206. designated in the ordinance of the municipality imposing the tax.
207. (j) If the improvements on the property shall be destroyed or materially damaged by fire or other casualty prior to closing, the provisions of the
208. Uniform Vendor and Purchaser Risk Act of Illinois shall apply.
209. (k) If Purchaser or Seller under this Contract is an Illinois land trust, the individual beneficiaries thereto have signed their names to this
210. Contract to indicate they are the beneficiaries of such trust in order to guarantee their performance of this Contract and to indicate that they
211. hold the sole power of direction with regard to such trust.
212. This Contract and Riders numbered, _____, _____, _____, RESIDENTIAL REAL PROPERTY DISCLOSURE
213. **REPORT and LEAD BASED PAINT DISCLOSURE**, unless inapplicable, are attached hereto and incorporated herein, shall be executed
214. by Purchaser and Seller and one copy thereof delivered to Seller and one copy delivered to Purchaser.

215. THIS IS A LEGALLY BINDING CONTRACT WHEN SIGNED. IF NOT UNDERSTOOD, SEEK LEGAL ADVICE BEFORE SIGNING.

216. PURCHASER(S): _____     SELLER(S): _____

217. PURCHASER(S): _____     SELLER(S): _____

218. Date of Offer: 8-8-08     Date of Acceptance*: 8/8/08

219. (*This date shall be inserted only after the parties hereto have agreed to all the terms and conditions of this Contract and is also referred to herein as the Contract Date).

**IDENTIFY OF BROKERS AND ATTORNEYS**
*(Please complete when executing the Contract)*

220. PURCHASER'S BROKER: Keller Williams Gold Coast Realty     SELLER'S BROKER: Schiller Realty Dina Femola

221. Telephone: 312-981-5500/312-388-2610     Telephone: 630-617-6074
222. Fax: 773-762-2604     Fax: 630-834-9454
223. ☑ (Designated) or ☐ (Dual Agent) (Select one)     ☑ (Designated) or ☐ (Dual Agent) (Select one)
224. Elizabeth Gossage     Dina Femola
         (Agent's Name)                                        (Agent's Name)

225. PURCHASER'S     SELLER'S
226. ATTORNEY: Larry Brown     ATTORNEY: Larry Ordower (Mike)
227. Telephone: 847-676-2263     Telephone: 312-263-5122
228. Fax: 847-676-2253     Fax: 312-263-0023

CHI1 #139360v2     4

LIST OF ITEMS FOR WHITE HOUSE, 732 FOREST GLEN

**1. BASEMENT**

a.   CERAMIC TILE OF FLOOR

b.   ~~BATTERY BACK UP FOR SUBPUMP.~~

c.   ~~FRIDGE REPLACED~~ removed

d.   REPLACE AND PAINT ANY BASEBOARD/MOLDING WITH WATER DAMAGE

**2. OUTSIDE**

a.   CLEAN  AND SECURE GUTTERS
b.   POWER WASH AND PAINT
c.   REPLACE OR PUT JACUZZI IN WORKING ORDER
d.   LEVEL PAVERS IN BACK YARD
e.   CUT DOWN OVER GROWTH OF FOLIAGE DUE TO LACK OF UPKEEP

**3. MAIN LEVEL**

a.   BATHROOM FAN BROKEN
b.   REPAIR GARAGE DOOR
c.   REPAIR LIGHT IN GARAGE
d.   REPAIR DOORBELL
e.   REPAIR SCREEN DOOR IN LAUNDRY ROOM

**4. STAIRWELL**

a.   CLEAN OR REPLACE CARPET
b.   SECURE BANISTER

**5.   SECOND LEVEL**

a.   CLEAN OR REPLACE CARPET

b.   PUT SHOWER HEAD IN SECOND BATHROOM
c.   REPAIR WALL IN 3RD BEDROOM
d.   REPAIR/REALIGN CLOSET DOOR IN 3RD BEDROOM
e.   FIX/REPLACE LIGHT FIXTURE IN MASTER BEDROOM CLOSET

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

# Illinois Association of REALTORS®
## RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT



NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THIS REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY SELLER CREATES LEGAL OBLIGATIONS ON SELLER THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: 732 Forest Glenn
City, State & Zip Code: Oak Brook IL 60523
Seller's Name: SHH & Associates

This report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of _____ 4 , 20__, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes", (correct), "no" (incorrect) or "not applicable" to the property being sold, if the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| YES | NO | N/A | |
|-----|----|----|--|
| 1. | | | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | ✓ | | I am aware of flooding or recurring leakage problems in the crawlspace or basement. |
| 3. | ✓ | | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | ✓ | | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | ✓ | | I am aware of leaks or material defects in the roof, ceilings or chimney. |
| 6. | ✓ | | I am aware of material defects in the walls or floors. |
| 7. | ✓ | | I am aware of material defects in the electrical system. |
| 8. | ✓ | | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | ✓ | | I am aware of material defects in the well or well equipment. |
| 10. | ✓ | | I am aware of unsafe conditions in the drinking water. |
| 11. | ✓ | | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | ✓ | | I am aware of material defects in the fireplace or woodburning stove. |
| 13. | ✓ | | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | ✓ | | I am aware of unsafe concentrations of radon on the premises. |
| 15. | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | ✓ | | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | ✓ | | I am aware of current infestations of termites or other wood boring insects. |
| 19. | ✓ | | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | ✓ | | I am aware of underground fuel storage tanks on the property. |
| 21. | ✓ | | I am aware of boundary or lot line disputes. |
| 22. | ✓ | | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:

_____

_____

Check here if additional pages used: _____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: _____    Date: 8/07
Seller: _____    Date: _____

PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTY THAT IT DOES NOT EXIST. PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____    Date: 4/8/06    Time: _____
Prospective Buyer: _____    Date: _____    Time: _____

108 Revised 1/00                    COPYRIGHT © BY ILLINOIS ASSOCIATION OF REALTORS®

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

**Illinois Association of REALTORS**



# DISCLOSURE OF INFORMATION ON RADON HAZARDS
## (For Residential Real Property Sales or Purchases)

**Radon Warning Statement**

*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.*

*The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.*

**Seller's Disclosure (initial each of the following which applies)**

_____ (a) Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).

_____ (b) Seller has provided the purchaser with all available records and reports pertaining to elevated radon concentrations within the dwelling.

_____ (c) Seller has no knowledge of elevated radon concentrations in the dwelling.

_____ (d) Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment (initial each of the following which applies)**

_____ (e) Purchaser has received copies of all information listed above.

_____ (f) Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement (initial if applicable)**

_____ (g) Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

| | |
|---|---|
| Seller X_____ | Date 1·2·08 |
| Seller _____ | Date _____ |
| Purchaser _____ | Date 4·6·08 |
| Purchaser _____ | Date _____ |
| Agent _____ | Date _____ |
| Agent _____ | Date _____ |

*1732 Forest Glen Lane*
*Oak Brook*

FORM 422

COPYRIGHT ILLINOIS ASSOCIATION OF REALTORS

Check Number: 10008
Check Date: Jul 31, 2008

Check Amount: $30,000.00

| Item to be Paid - Description | Discount Taken | Amount Paid |
|---|---|---|
| EQUIPMENT PURCHASES | | 30,000.00 |

**10008**

**MIDWEST LEASING OF OAK BROOK, INC.**
ACCOUNTING OFFICE
55 W. WACKER DR. - SUITE 1120
CHICAGO, ILLINOIS 60601
(312) 388-2610

Check Number: 10008

THE PRIVATE BANK
AND TRUST COMPANY
TEN NORTH DEARBORN
CHICAGO, IL 60602
2-648/710

DATE
Jul 31, 2008

AMOUNT

Memo:

$30,000.00

Thirty Thousand and 00/100 Dollars

PAY
TO THE
ORDER
OF:

SCHILLER REALTY
ELMHURST, IL 60126

AUTHORIZED SIGNATURE

⑈0 10008⑈  ⑆071006486⑆  10126 2⑈

MIDWEST LEASING OF OAK BROOK INC.                           **10008**